## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| **VISION ADVANCEMENT, LLC** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 2:05-CV-455** |
| | § | |
| **JOHNSON & JOHNSON VISION** | § | |
| **CARE, INC. D/B/A VISTAKON** | § | |

### MEMORANDUM OPINION AND ORDER

At a hearing on March 6, 2007, the Court granted Defendant's Motion for Leave to Amend its Answer to Plead Inequitable Conduct (Docket No. 135). The Court now enters this Memorandum Opinion and Order explaining the Court's ruling.

### BACKGROUND

In this case, Plaintiff Vision Advancement, LLC ("Plaintiff") has accused Defendant Vistakon ("Defendant") of infringing eight of its patents. The inventor is Dr. Valdemar Portney ("Portney"). According to Defendant, Tim Willis ("Willis") was Portney's colleague at two prior employers, CILCO and Allergan Medical Optics, and was actively involved in prosecution of several of the patents-in-suit. The deadline for both parties to add inequitable conduct claims was April 13, 2006. After that date, the parties are required to seek leave of Court to add such claims. This case is set for a bench trial on July 31, 2007.

Defendant contends that in early January of 2007, it learned of material prior art that Portney and Willis failed to disclose to the Patent Office and that on January 9, 2007, it sent Plaintiff a draft of an Amended Answer containing these allegations. Upon learning that Plaintiff would oppose the Amended Answer, Defendant filed this Motion to Amend on January 22, 2007.

## APPLICABLE LAW

Federal Rule of Civil Procedure 16(b) allows a party to modify the Court's docket control order upon a showing of good cause.[1] FED. R. CIV. P. 16(b). The good cause standard requires the party seeking relief to show that, despite its exercise of diligence, it cannot reasonably meet the scheduling deadline. *S&W Enters., L.L.C. v. Southtrust Bank of Ala.*, 315 F.3d 533, 535 (5th Cir. 2003). The Court has broad discretion to allow scheduling order modifications and considers four elements to determine if modification is appropriate: (1) the explanation for the party's failure to meet the deadline, (2) the importance of what the Court is excluding, (3) the potential prejudice if the Court allows the thing that would be excluded, and (4) the availability of a continuance to cure such prejudice. *Id*. at 536.

## ANALYSIS

*Defendant's Explanation for Failing to Meet the April 13 deadline*

To establish a claim of inequitable conduct, Defendant must prove that Plaintiff withheld material information from the patent office with an intent to deceive. *See Perspective Biosystems, Inc. v. Pharmacia Biotech, Inc*., 225 F.3d 1315, 1318 (Fed. Cir. 2000). Defendant contends that each of the asserted patent claims relate in some way to ophthalmic lenses that have regions of progressivity between the first and second vision correction powers (*e.g*., between near and distance correction powers). According to Defendant, during the prosecution of the patents-in-suit, Portney and Willis failed to disclose a progressive lens developed by Dr. Howard Barnett ("Barnett") and

---

[1] In its motion, Defendant seeks leave to amend under Federal Rule of Civil Procedure 15. However, the correct standard is good cause as set forth in Rule 16 because the Court has provided a deadline for amending pleadings to add inequitable conduct allegations. *See Ciena Corp. v. Nortel Networks*, *Inc*., 233 F.R.D. 493, 494 (E.D. Tex. 2006). Nonetheless, for the reasons discussed below, the Court finds that Defendant has satisfied Rule 16's good cause standard.

papers discussing this lens to the Patent Office. More specifically, citing Willis' deposition testimony, Defendant asserts that in 1982, Portney and Willis, while employees of CILCO, sat in on a presentation made by Barnett where this progressive lens was discussed. Thereafter, Portney prepared a "White Paper" setting forth the concept of his invention and referencing Barnett's lens design. Defendant contends that the meeting with Barnett was the impetus for Portney's lens design that he eventually claimed in the patents-in-suit.

Defendant further asserts that its expert in this case, Dr. Gerald Lowther ("Lowther"), wrote a paper with Scott Hinkle ("the Hinkle/Lowther paper") discussing the progressive nature of the Barnett lenses and this paper was cited by Portney in his "White Paper." Defendant also contends that Lowther has a copy of a paper he wrote concerning the Barnett lens as well as a cover note indicating that he sent a copy of this paper to Willis ("the Lowther paper"). Defendant contends that Plaintiff should have disclosed the Barnett lens, the Hinkle/Lowther paper, and the Lowther paper to the Patent Office during prosecution of the patents-in-suit. Defendant further points out that although Plaintiff produced the "White Paper," the other papers were not produced by Plaintiff in this lawsuit.

Plaintiff contends that because it produced Portney's "White Paper" in March of 2006, Defendant should have seen the reference to the Barnett lens and the Hinkle/Lowther paper, which, in turn, references the Lowther paper. Plaintiff further claims that when Defendant hired Lowther over six months ago, it had access to all of this information at that time and should not now be allowed to amend its answer to add these inequitable conduct allegations. Finally, Plaintiff alleges that during Willis' and Portney's depositions in November and December of 2006 respectively, Defendant's questions showed appreciation of Barnett's alleged significance.

Defendant counters that it could not plead inequitable conduct based on the failure to disclose the Barnett lenses until it was able to obtain copies of the papers and that these papers did not come from Plaintiff, but from Lowther when he fortuitously discovered these papers in his file. Defendant also argues that: (1) the Hinkle/Lowther paper was unpublished and the "White Paper" does not list Lowther as a co-author of the Hinkle paper, (2) the "White Paper" does not show that Barnett visited with Portney and Willis and that Barnett's lenses formed the impetus for Portney's invention, (3) in his deposition, Portney stated that he had little recollection of the Barnett lenses and he did not recall whether the Barnett lens had an area of progressivity, (4) Plaintiff did not disclose Dr. Barnett until its Supplemental Initial Disclosure of February 5, 2007, and (5) its questions to Portney concerning Barnett involved a Barnett patent, not necessarily the Barnett lenses described in the papers at issue.

The Court finds that while Defendant had some minimal information concerning the Barnett lenses, it did not have sufficient information to plead specific allegations of inequitable conduct until it discovered the papers at issue in January of 2007. The Court is not persuaded that a lack of diligence explains why Lowther did not discover these papers until January. The papers were written some twenty-five years ago and there appears to be no reason Lowther would have necessarily connected the reference to Barnett in the "White Paper" to the papers at issue. While Defendant did ask Willis and Portney some questions about Barnett during their depositions, it is not clear that the questions pertained to the papers at issue. Further, these depositions did not take place until November and December of 2006 and through these depositions Defendant learned some additional details about the alleged connection between a meeting Portney and Willis had with Barnett and the preparation of Portney's "White Paper." Once Defendant discovered the Hinkle/Lowther and

Lowther papers, it promptly informed Plaintiff of its intent to file an amended answer containing inequitable conduct allegations. When Defendant informed Plaintiff of its intent to plead these allegations, trial was seven months away.

While the Court's deadlines are extremely important, they are not absolute and the Court must fashion its approach according to the particular circumstances of each case. Ultimately, Defendant may or may not be able to prove its allegations, but the Court finds Defendant's explanation for its failure to meet the deadline reasonable and that Defendant should have an opportunity to present these allegations in this case.

*The Importance of the Inequitable Conduct Claims*

The Court finds that the importance of these allegations is clear. If Defendant is able to prove these allegations, the patents-in-suit would be rendered unenforceable.

*Potential Prejudice to Plaintiff if the Court Allows the Inequitable Conduct Claims*

Plaintiff argues that it will be prejudiced primarily because of the approaching discovery deadline and the necessity for it to conduct discovery on this issue. It is important to note that while the Court had not yet granted Defendant leave to amend, Plaintiff has been aware of these allegations since early January. Further, at the hearing, the Court granted Plaintiff's request for discovery on this issue and additional time to complete it. The Court finds that the opportunity for additional discovery has alleviated the prejudice to Plaintiff if these allegations are allowed in this case.

*The Availability of a Continuance to Cure Any Such Prejudice*

Any prejudice that Plaintiff may have suffered by the addition of these allegations has been alleviated by the additional discovery and the time to complete it. Thus, the Court finds that a continuance is not warranted here.

## CONCLUSION

Defendant has shown sufficient good cause to add the above-referenced allegations of inequitable conduct. For the reasons discussed above and in accordance with the Court's ruling from the bench on March 6, 2007, Defendant's motion to amend is **GRANTED**.

**So ORDERED and SIGNED this 19th day of March, 2007.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE